I represent Henry Owen Chambers. My name is Alexander Munches. I'm with the Office of the State Appellate. It is well settled that several criminal offenses may arise from a single act. When they do, the state must charge them all with 120 days, typically, after the start of the prosecution. The state failed to do that in this case. 652 days after the start of the prosecution, and about 5 days before trial, the state sought additional charges against Mr. Chambers on the basis of a single, continuous, and uninterrupted act. Now, the record does not reveal why the state waited so long to do so. However, the record does make clear that it was aired to do so. Now, the facts underlying this appeal are simple. While driving around, Mr. Chambers and an accomplice, Jones, saw people sitting in a parked car and decided to commit armed robbery. They parked and exited on foot. Mr. Chambers approached the passenger side. Jones approached the driver's side. Within seconds, the car's three occupants exited the car at Jones' command, which included a demand for wallets and cell phones. Mr. Chambers held the two passenger side occupants at gunpoint. Jones held up the driver. A fourth would-be passenger then appeared. Mr. Chambers pointed his gun at him and patted him down, looking for a wallet or cell phone. The last name of this passenger was DeForest. The driver was Huffman. Perhaps two minutes later, Accomplice Jones then drove off in Huffman's car, and Chambers left in the car which he and Jones had showed up in. There was some dispute about the timing of these events, right? I mean, there was some testimony that Chambers didn't get out or, yeah, that Chambers didn't get out of the car until DeForest showed up. Sure. Some testimony was from the two people that had guns pointed at him. Still other testimony was from the two people sitting in that car that Jones and Chambers had shown up in. And there are some inconsistencies. However, when you sum it up as this data, and Mr. Chambers has done his briefing, it's a state data-enclosing argument. It's agreed, essentially, that Mr. Chambers held three people at gunpoint on the passenger side, and Mr. Jones held the driver at gunpoint on the driver's side. Now, the grand jury indicted Mr. Chambers for the armed robbery of Huffman on December 12, 2010. And 652 days after that, after reading a transcript of the first grand jury proceedings, the second grand jury then indicted Mr. Chambers for the attempt on robbery. Now, under a straightforward application of compulsory joinery and speedy trial principles, Mr. Chambers' single, continuous, and uninterrupted act of crowd control was one act that gave rise to multiple offenses. To begin, although Mr. Chambers did not point a gun at Mr. Huffman, he was nonetheless guilty of that armed robbery. The statement made the same point in its closing argument to the jury, and I'd like to quote that. And what's Mr. Chambers doing while this is all going on? He's out of the vehicle. He's on the other side. He's doing crowd control. When he sees DeForest come walking around the corner, he knows, hey, this is a problem. So he goes up to stop him from making a phone call or for calling for help. He points a gun in his face, and that is helping Jones commit the armed robbery of Huffman, and that's what Mr. Chambers did. So Mr. Chambers' gunpoint pat-down to DeForest was part and parcel of his single act. But by controlling the crowd during this armed robbery, Mr. Chambers was likewise guilty of the attempt on robbery with DeForest. Indeed, regarding this attempt on robbery, the prosecutor repeated itself and said, Mr. Chambers approached DeForest, put a gun in his face, and he was patting him down, trying to find either money or something to take from him. Mr. Chambers was pointing a gun at DeForest, and he was patting him down. OK, let me ask a question. Did he need to pat him down or check to see if he had a wallet in order to complete the armed robbery of Huffman? He did not need to do that in order to complete the armed robbery. The armed robbery was ongoing. So as part of the attempt armed robbery of DeForest, he committed additional acts that weren't necessary for crowd control on the robbery of Huffman. Oh, I misspoke. I'm sorry. I thought you were saying, was the armed robbery of Huffman completed at that moment? And the answer is, of course, no. Well, my point is, in analyzing this as all being the same act, OK, he was, I mean, at the point in time where he's holding the gun on DeForest, and in order to aid, and I think it's true that it did aid the armed robbery of Huffman, but he didn't have to try to find DeForest's wallet to aid the armed robbery of Huffman. So weren't there additional acts there that then constituted attempted armed robbery? I guess it was attempted because DeForest didn't have any money. Sure. He couldn't complete it because he didn't have anything to steal. And I think to say that the patting for the wallet and pointing the gun were two different acts is a hyper-technical interpretation that the Supreme Court has told us not to do. Now, in Quigley, the state made a very similar argument. That was a case involving misdemeanor DUI and an aggravated DUI. Now, the Supreme Court ultimately said this was one act, and the state was required to join these charges together. The state had argued in that case, well, essentially, the misdemeanor was DUI was complete when he was drunk, sat on the front seat of the car, and had the keys in his hand. That's the misdemeanor DUI offense. However, then, at some point down the road, drove and got into a collision. The state argued to the Supreme Court these are two different acts, and the Supreme Court said no. That's a hyper-technical interpretation. That's not something that we do under this analysis. I think similarly here, you have one continuous, ongoing act of crowd control. And although it's possible to dice these moments in time, it's not at all advisable. The Supreme Court has strongly cautioned us against that. If all he did was hold the gun on DeForest, but didn't pat him down or anything, would there even be any charge of attempted armed robbery on DeForest? I think the state could bring that charge, yes. Yes, Your Honor. So, to be certain, the state also asked this court to create an accountability exception to compulsory drug use and beating and trauma. In doing so, the state overlooked precedent in the people-be-willingness by the Illinois Supreme Court. That was a case where a defendant helped minors to plan two murders, had furnished a gun to the minors, and then helped them cover up those murders. The defendant was initially charged with contributing to the delinquency of the minors, and later charged with murder by accountability with respect to that one particular murder. The Supreme Court reversed that. That's because there is no accountability exception to compulsory drug use in the trial. Now, in conclusion, I'd just like to say that multiple offenses arose when two armed men acted in tandem to rob strangers at gunpoint. However, the state failed to seek re-indictment within 120 days and instead waited 652 days. Moreover, trial counsel did not seek dismissal, thus trial counsel was ineffective. We ask on these basis that Mr. Chamber, that this court reverse this conviction for attempted armed robbery and a sentence of 15 years, leaving him to serve the remainder of his 20-year sentence for armed robbery. Thank you, counsel. Thank you. Argument for the state. Thank you. May it please the court? Counsel. Jennifer Camden on behalf of the people. First, I'd like to address the defendant's contention that the armed robbery and attempted armed robbery charges were based on the same act because he committed a continuous and uninterrupted act. Of crowd control in holding DeForest, Jason, and Sarah at gunpoint. Jason and Sarah being the two passengers in Huffman's, in the back of Huffman's car. No witness testified that he held DeForest and the others at gunpoint at the same time. DeForest was not part of the crowd that defendant controlled when he pointed his gun at the passengers that came out of the charger. First, the defendant got out of the stolen Cobalt, pointed his, went over to the Huffman's charger, pointed his gun at the passengers in the charger. The charger, by the way, was parked on the street in front of an apartment building. Then, he saw Huffman's fourth friend, or third friend, DeForest, rounding the corner of the apartment building in front of which the car was parked. The defendant left the area in front, near the charger and went over to DeForest near the building and pointed his gun at DeForest and then demanded personal property and did the pat down. So, DeForest was not part of that crowd in front of the charger and no one testified that he was. No one testified that the defendant pointed his gun at DeForest, Jason, and Sarah at the same time or that he was in the same place when he did so. Brownlee testified that the defendant handled the crowd regarding the actions toward the passengers in the charger. He never testified that he saw the defendant point the gun at DeForest. DeMond, the other passenger in the Cobalt, testified that the defendant pointed the gun at DeForest and then that he used it to, quote, check the other people referring to the passengers in the charger. DeForest didn't say that he saw the defendant point the gun at anyone else, just him, when he was at the corner of the building. And Huffman testified that he saw the defendant point the gun at DeForest but didn't testify that the defendant pointed the gun at Jason and Sarah. So, the conclusion is that DeForest was never part of the crowd that got out of the charger and the defendant's act of crowd control, to which a couple of the witnesses testified, was referring to his act of pointing his gun at the passengers from the charger. And furthermore, the state, in closing, never said that the defendant pointed the gun at everyone at the same time. The state, in referring to the act of crowd control, was referring to the defendant's act toward the passengers in the charger. The state further argued that the defendant was accountable for the armed robbery based on his acts of bringing his gun with him, even though premeditation wasn't required, getting out of the Cobalt when or after Huffman, or when or after Langston Jones did, going over to the passenger side of the charger, pointing his gun at Jason and Sarah, and then pointing his gun at DeForest. Those were the acts upon which the state argued that the defendant was accountable for the act of armed robbery. Well, I mean, the defendant here aided the armed robbery of Huffman by preventing whoever was there from interfering with that armed robbery. I mean, that, you know, no doubt about that. But in order to do that, he didn't have to pat down DeForest. I mean, what about the fact that additional acts that constituted attempted armed robbery of DeForest were taken that weren't required to keep him from interfering with the armed robbery of Huffman? Is that part of the argument here? That is part of my argument, yes, absolutely, Your Honor. The defendant's act of the attempted armed robbery of DeForest was not complete when, just by the defendant pointing the gun at DeForest. I mean, he could have stopped, kept DeForest from interfering with the armed robbery by just pointing the gun at him. Sure. But the additional thing he said was, might as well take his wallet, too. Right. Problem was he didn't have a wallet. Right. And those were the acts that resulted in the charge of attempted armed robbery. Right. And so that wasn't all one single and continuous and uninterrupted act, pointing the gun at Jason and Sarah, pointing the gun at DeForest, and then further demanding the wallet and doing the pat-down. How can that be one single and uninterrupted act? I'd point the court toward the people-sided case of People v. Flar, an appellate court case in which the court held that the defendant's act of transmitting child pornography over the internet and then also retaining a copy for himself was not the, quote, same act within the meaning of the compulsory joinder statute because his act of saving a copy for himself indicated a volitional departure from his intent of transmitting. And I'd argue that the defendant's act of demanding the wallet and doing the pat-down signaled a volitional departure here as well, meaning that the compulsory joinder statute doesn't apply. I'd also point the court toward the Illinois Supreme Court's opinion in the Hunter case in 2013, which points reviewing courts toward the statute's committee comments for guidance in whether a situation meets the same act test, which is to be narrowly interpreted. An example that they gave is a defendant's act of stealing one container, holding items belonging to multiple people. That's the kind of single act that can form the basis of multiple crimes, and that's not what happened here. Unless the court asks further questions about the same act analysis, I'll move on to argue a defendant's discussion of Williams, the Williams case. Because arguably a more fundamental problem with applying compulsory joinder principles to this case on appeal is that it involves these principles of accountability. Accountability is the legal theory upon which this defendant was held responsible for Jones' armed robbery of Huffman. The trier of facts, of course, can consider all manner of evidence that occurs both before and after the armed robbery in determining whether the defendant was accountable for that armed robbery. And here, I'd argue that there's no single physical act upon which the defendant's accountability for armed robbery was based. And I found no case in which a defendant on appeal or a review in court selects an act from the record and decides that that is the act upon which accountability is based for purposes of the same act analysis under the compulsory joinder statute. And that's the difference between this case and the Williams case, in which the state conceded the compulsory joinder issue in the trial court and on appeal. The issue that the court went on to decide in Williams was whether, given that the compulsory joinder statute applied, the speedy trial statute then barred the trial on the later filed charge. So this case is distinguishable because in Williams, the state conceded that compulsory joinder issue and conceded that the two charges, the murder and contributing to the delinquency of a minor, were alternative charging theories based on the exact same set of facts. The state further conceded that no additional evidence would be required to prove one crime versus the other crime. And I think, Your Honor, that that also goes to the question of the additional act of the pat down here. Here, there was no concession of the compulsory joinder issue or that the charges were alternative charging theories regarding the same single act. And that's key here because the record shows that there were multiple acts by the defendant that together proved he was accountable for Jones' armed robbery of Huffman, showing up at the scene with a gun, getting out of the cobalt and approaching the charger, holding Jason and Sarah at gunpoint, and so forth. And different evidence was required to prove the armed robbery and attempted armed robbery charges. And to the extent that the Supreme Court in Williams accepted the state's concession that there was one physical act and two charges based on it, and really the Supreme Court just noted the state's concession and moved on, that doesn't show that a review in court is always able to discern the single act upon which accountability is based for purposes of a compulsory joinder analysis. The defendant's argument that the single act of crowd control formed the basis of both offenses is based on the state's closing argument in which the state mentioned the defendant's act of crowd control, and again, by which the state was referring to his holding Jason and Sarah at gunpoint. But that wasn't meant to be, in any event, an exhaustive list of every bit of evidence showing that the defendant was accountable for the armed robbery. The state mentioned crowd control, but that doesn't mean that that was the single physical act upon which accountability for armed robbery was based. In fact, there was lots of evidence of the defendant's accountability, both the evidence that I've already discussed and also the evidence that happened subsequent to his attempted armed robbery of deforce when the defendant ran back to the charger, which Langston Jones was driving away in, and tried to get into the charger, tried to flee with Langston, and then got into the cobalt and fled himself, and so forth. So the real problem for the defendant here is that the state's closing argument at trial in this case can't take the place of the state's concession in Williams that the charges in that case were based on the same physical act. Thank you, counsel. Rebuttal argument? Thank you. Just two points in rebuttal. First, a quick one. If you look at the briefing, Williams slams the door shut towards the state's argument that there's an accountability exception compulsory during a speedy trial. Just ask this court to pay careful attention to Williams. I think Mark Twain used the word to say that reports of my death are greatly exaggerated. I think the point is equally true about the legal relevance of the state's concession in that case. The Illinois Supreme Court is free to analyze these legal issues on its own, and it did so correctly in that case. This court should follow Williams. But, Your Honor, I know that you're very interested in what you describe as an additional act or pose as a possible additional act. People view Hunter in the Illinois Supreme Court case cautioned the court strongly against relying on an elements-based analysis when talking about an act for purposes of compulsory enjoyment. Of course, we can always dice up moments finer and finer and finer. But here, what we really have is an armed robbery that happened in perhaps two minutes' time, and witnesses who were approached nearly simultaneously by Chambers and Jones and robbed at gunpoint. Of course, it's always possible to dice these moments up, but this court should not do so. Are there any other questions? I don't believe so, counsel. Thank you. We'll take this case under advisement, and we're going to go into recess until 9 tomorrow morning. We'll be in recess. All rise.